UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ELLIS A. SHARP,                          )
                                         )
                    Plaintiff,           )
                                         )
v.                                       )        No.:   3:06-CV-144
                                         )               (VARLAN/SHIRLEY)
VALLEY FORGE LIFE INSURANCE              )
COMPANY,                                 )
                                         )
                    Defendant.           )

## MEMORANDUM OPINION

This civil action is before the Court on plaintiff Ellis Sharp's ("Plaintiff's") Motion

for Summary Judgment [Doc. 11] and defendant Valley Forge Life Insurance Company

("Defendant's") Motion for Summary Judgment [Doc. 14]. Defendant has filed a response

in opposition to Plaintiff's motion [Doc. 17]. Plaintiff has not responded to Defendant's

motion and the time for doing so has passed. *See* L.R. 7.1(a), 7.2.

The Court has carefully considered the pending motions, along with the parties' briefs,

affidavits, and other relevant pleadings. For the reasons set forth herein, Defendant's motion

for summary judgment [Doc. 14] will be granted and Plaintiff's motion for summary

judgment [Doc. 11] will be denied.

## I.       Relevant Facts

On or about December 27, 1999, Plaintiff signed an application for a life insurance

policy with Defendant. [Doc. 14, Attachment 2 at pp. 5-7, Attachment 3.] The application

was complete and accurate. [Doc. 14, Attachment 2 at pp. 5-7.] The application reflected

Plaintiff's correct primary home address.[1] [*Id*. at p. 5.] Plaintiff successfully obtained a life insurance policy (the "Policy") from Defendant and made regular premium payments for several years. [Id. at p. 5.] Around July 4, 2004, Plaintiff temporarily moved out of his primary home address and instead lived at multiple secondary addresses. [*Id*. at p. 14-15.] Plaintiff did not resume living at his primary home address until late February or early March of 2005. [*Id*. at p. 14.] While Plaintiff was living at the secondary addresses, Plaintiff's ex-wife delivered Plaintiff's mail to him on a sporadic basis. [*Id*. at p. 13.] Plaintiff never notified Defendant of Plaintiff's secondary addresses. [*Id*. at p. 14.]

On December 3, 2004, Defendant mailed a Statement of Premium Due to Plaintiff's primary home address. [Doc. 16 at p. 4.] The Statement of Premium Due indicated that Plaintiff's Policy premium payment of $661.42 was due on or before December 28, 2004. [Doc. 16, Attachment 4]. Defendant has no record of the December 3, 2004, Statement of Premium Due being returned as undeliverable, nor of the post office notifying Defendant of a change of address by Plaintiff. [Doc. 16 at p. 4.] By the terms of the Policy, Plaintiff had a thirty-one day grace period, ending on January 28, 2005, to make the December 2004 premium payment. [Doc. 12, Attachment 2 at p. 27.] Defendant did not receive Plaintiff's December 2004 Policy premium payment during the grace period. [Doc. 16 at p. 5.] Under the Terms of the Policy, failure to pay the December 2004 Policy premium during the grace

_____

[1]For privacy reasons, the Court will not disclose Plaintiff's home address, but will instead refer to the address indicated in Plaintiff's application for life insurance as the primary home address.

period resulted in the automatic expiration of the policy. [Doc. 12, Attachment 2 at p. 27; Doc. 16 at p. 5.]

Under the Policy, after the grace period, Plaintiff had a twenty day period, ending on February 17, 2005, during which he could reinstate the Policy without having to provide evidence of insurability. [Doc. 12, Attachment 2 at p. 27; Doc. 16 at p. 5.] In recognition of this twenty day reinstatement period, on January 28, 2005, Defendant mailed a Late Payment Offer to Plaintiff's primary home address. [Doc. 16 at p. 5.] Defendant has no record of the January 28, 2005, Late Payment Offer being returned as undeliverable, nor of the post office notifying Defendant of a change of address by Plaintiff. [*Id.* at p. 6.] Defendant did not receive Plaintiff's December 2004 premium payment during the twenty day reinstatement period. [*Id.*]

Under the terms of the Policy, after the twenty day reinstatement period, the Policy could only be reinstated if Plaintiff provided proof of insurability and paid all past due premiums with six percent interest compounded annually. [Doc. 12, Attachment 2 at p. 27.] On February 28, 2005, Defendant mailed a Notice of Policy Termination to Plaintiff's primary home address and to Plaintiff's local insurance agent. [Doc. 16 at p. 6]. Defendant has no record of either copy of the February 28, 2005, Notice of Policy Termination being returned as undeliverable, nor of the post office notifying Defendant of a change of address by Plaintiff or Plaintiff's local insurance agent. [*Id.*]

Plaintiff did not receive the February 28, 2005, Notice of Policy Termination until approximately March 10, 2005, when Plaintiff's ex-wife delivered a stack of Plaintiff's mail

to Plaintiff. [Doc. 14, Attachment 2 at p. 9.] It appears that, because Plaintiff did not return to his primary home address until late February or early March of 2005, and because of his infrequent receipt of mail, Plaintiff either did not receive the December 3, 2004, and January 28, 2005, mailings, or received those two mailings at the same time he received the February 28, 2005, mailing. Upon receipt of the Notice of Policy Termination, Plaintiff mailed Defendant a check, dated March 10, 2005, in the amount of $661.42 for the December 2004 Policy premium and a letter explaining the delay in payment. [*Id*. at p. 10.]

On March 14, 2005, Defendant received Plaintiff's check of March 10, 2005. [Doc. 16 at p. 7.] Per Defendant's normal procedure, Plaintiff's check was deposited with all other checks received on March 14, 2005. [Id. at pp. 7-8.] On March 15, 2005, Defendant determined that Plaintiff's check of March 10, 2005, had been received after the Policy had lapsed and initiated the process for refunding Plaintiff's $661.42 payment. [*Id*. at p. 8.] On March 18, 2005, Defendant mailed Plaintiff a letter indicating that Plaintiff's check of March 10, 2005, had been received after the Policy had lapsed, that the Policy was no longer valid, and that a refund of Plaintiff's late payment would be sent under separate cover. [Doc. 16, Attachment 11.] On or about March 21, 2005, Defendant mailed Plaintiff a refund check in the amount of $661.42. [Doc. 16 at p. 9.] Plaintiff received the refund check, but returned the check to Defendant uncashed. [Doc. 14, Attachment 2 at p. 16.] Some time later Defendant mailed Plaintiff another refund check, which Plaintiff again returned to Defendant uncashed. [*Id*.]

During the refund process, Plaintiff also attempted to reinstate the Policy by providing proof of insurability. [*Id*. at p. 18.] On or around March 11, 2007, Plaintiff filled out an application for reinstatement of the Policy and mailed it to Defendants. [Doc. 16 at p. 8.] However, the application was incomplete, so on or around March 17, 2007, Plaintiff's local insurance agent returned the application for reinstatement to Plaintiff so that Plaintiff could complete the form and return it to Defendant. [*Id*.] Plaintiff also underwent a physical examination in conjunction with the reinstatement application. [Doc. 14, Attachment 2 at pp. 18-19.] Defendant denied Plaintiff's application for reinstatement because of Plaintiff's medical history. [*Id*. at pp. 19-20.]

Plaintiff subsequently filed suit in the Chancery Court of Knox County, Tennessee, seeking a declaratory judgment that, because Defendant had negotiated Plaintiff's check, it should be estopped from cancelling Plaintiff's policy for non-payment. [Doc. 1, Attachment 2.] Defendant then removed the action to this Court. [Doc. 1.] The parties subsequently filed the instant motions, which are now ripe for adjudication.

## II.    Analysis

### A.    Standard of Review

Under Fed. R. Civ. P. 56©, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2

(1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

B.    Terms of the Policy

Under Tennessee law, the interpretation of an insurance contract is a matter of law for determination by the Court. *Corrington v. Equitable Life Assurance Society of U.S.*, 265 F. Supp. 2d 905, 909 (W.D. Tenn. 2003). The Court is instructed to construe insurance policies in the same manner as any other contract, *Id.*; *Alcazar v. Hayes*, 982 S.W.2d 845, 848 (Tenn. 1998), and to give effect to the parties' intentions as reflected in the written contract of

insurance. *Harrell v. Minnestoa Mut. Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn. 1996). When the provisions of an insurance policy are clear and unambiguous, the Court's construction of the policy should favor neither party. *Brown v. Tennessee Auto. Ins. Co.*, 237 S.W.2d 553, 554 (Tenn. 1951); *Massachusetts Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 20 (Tenn. Ct. App. 2002). The Court is also advised to avoid artificially narrowing the policy's coverage or extending coverage beyond the policy's intended scope. *Massachusetts Mut. Life Ins. Co.*, 104 S.W.3d at 20. However, when a policy provision is susceptible to more than one construction, an ambiguity exists and the provision must be construed against the carrier and in favor of the insured and coverage. *Memphis Furniture Mfg. Co. v. American Cas. Co.*, 480 S.W.2d 531, 532-33 (Tenn. 1972).

The Policy contains the following terms regarding payment of premiums:

> 3.21 PAYMENT OF PREMIUMS - Each premium, other than the first, must be paid on or before its Premium Due Date. The first premium must be paid to Our authorized agent in exchange for a receipt signed by Our Corporate Secretary and countersigned by the agent. Premiums, other than the first, must be paid to Us at Our Executive Office. Premiums must be paid at the rates and modes shown in the Schedule of Policy Premiums. If You want to change the Mode of Premium Payment, we must receive Written Notice from You.

> 3.22 GRACE PERIOD - Any premium, other than the first, which is not paid by its Premium Due Date may be paid while the insured is living within a Grace Period of 31 days after its Premium Due Date. Your policy stays in force during the Grace Period. If the Insured dies during a Grace Period, We will deduct the unpaid premium for the Policy Month in which the Insured dies from the policy proceeds.

3.23 REINSTATEMENT - This policy may be reinstated while the Insured is alive within 20 days after the end of the Grace Period by payment of the unpaid premium. We will not require evidence of insurability. Reinstatement does not extend the Grace Period.

This policy may also be reinstated following the 20 day period after the end of the Grace Period. Such reinstatement must be made while the insured is living and within 5 years after the Premium Due Date of the unpaid premium. For such reinstatement We will require:

1.      Evidence of insurability satisfactory to Us; and

2.      Payment of all past due premiums with interest at 6% per year compounded annually to the date of reinstatement.

The reinstated policy will be in force from the date We approve the reinstatement application.

[Doc. 12, Attachment 2 at p. 27.] In addition, the Policy states that:

3.13 Incontestability - We cannot contest this policy, except for non-payment of premiums, after it has been in force during the insured's lifetime for 2 years from the Policy Date or if reinstated the date of reinstatement. Reinstatements may be contested only with respect to material misstatements made in the application for reinstatement.

[*Id*.] The Policy contains the following relevant defined terms:

Grace Period - is the period after a Premium Due Date during which We will accept premiums without any change to Your benefits. Details are in Section 3.22.

Premium Due Date - is the date by which premiums, other than the first, must be paid. If the annual Mode of Premium Payment is chosen, the Premium Due Dates are the Policy Anniversaries. If the pre-authorized premium payment, quarterly, semi-annual mode of premium payment is chosen, the Premium Due Dates are, respectively, every 1 month, 3 months or 6 months from the

> Policy Date. The first Premium Due Date is measured from the
> Policy Date. All following Premium Due Dates are measured
> from the immediately preceding Premium Due Date.

[*Id*. at p. 25.] In addition, the June 28, 2004 and December 28, 2004 Statements of Premiums

Due contained the following language:

> Important Notice: Except as specifically provided in your policy
> relative to non-forfeiture benefits, if the premium indicated
> above is not paid withing 31 days of the due date indicated, your
> coverage will terminate effective as of the premium due date,
> and no benefits will be payable after such date.

[Doc. 16, Attachments 3, 4.]

Based upon the plain language of the Policy, the Court finds that the Policy terminated

when Defendant did not receive the December 2004 premium payment before the end of the

grace period, January 28, 2005. Plaintiff then had twenty days to reinstate the Policy,

without providing proof of insurability, by paying the past due premium. This initial

reinstatement period ended on February 17, 2005. Given that Plaintiff did not mail his

December 2004 premium payment until approximately March 10, 2005, the Court finds that

Plaintiff was clearly within the secondary reinstatement period, and under the terms of the

Policy, could only reinstate the Policy by providing proof of insurability and paying all past

due premiums. Plaintiff was unable to provide proof of insurability to Defendant's

satisfaction. Thus, the Court finds that Plaintiff did not reinstate the Policy in accordance

with the Policy's terms.

C.    <u>Waiver</u>

However, while Plaintiff did not reinstate the Policy under its own terms, it is possible for contracting parties to waive the terms of a contract. Plaintiff contends that Defendant waived Plaintiff's breach of the Policy by accepting Plaintiff's late payment and that the Policy was effectively reinstated because of that waiver. Defendant contends that the Policy terminated automatically when Plaintiff failed to make timely payment of his December 2004 premium, that the Policy, by its plain language, prevents waiver, and that Defendant did not accept Plaintiff's late payment, but instead posted it to a suspense account so that the payment might be refunded.

Under Tennessee law, "[w]aiver is commonly defined as the 'voluntary relinquishment of a known right[,] established by express declarations or acts manifesting an intent not to claim the right.' In general, by accepting benefits under a contract with knowledge of a breach, the non-breaching party waives the breach." *94th Aero Squadron of Memphis, Inc. v. Memphis-Shelby County Airport Authority*, 169 S.W.3d 627, 635-36 (Tenn. Ct. App. 2004) (citations omitted). "Waiver may also be shown by 'express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was [the party's] intention and purpose to waive.'" *Id.* at 636. "The law will not presume a waiver, and the party claiming the waiver has the burden of proving it by a preponderance of the evidence." *Id.* at 636 n.3.

Initially, the Court notes that the Policy's terms contain a "no waiver" provision. Specifically, the Policy states that "[n]o one has the right to change any part of this policy or to waive any of its provisions unless the change is approved in writing on the policy by one of Our officers." [Doc. 12, Attachment 2 at p. 27.] However, the Tennessee Supreme Court has held that "a written contract may be changed by parol, and this although it stipulate that it shall only be changed in writing, for the obvious reason that men cannot tie their hands or bind their wills so as to disable them from making any contract allowed by law, and in any mode in which it may be entered into." *Dale v. Continental Ins. Co.*, 31 S.W.2d 266, 269 (Tenn. 1895). Accordingly, the existence of a "no waiver" clause does not mean that the terms of the Policy could only be waived in writing.

Plaintiff points to two Tennessee cases in support of his waiver argument. In *McKenzie v. Planters Ins. Co.*, 56 Tenn. 261 (1872), the Tennessee Supreme Court decided a case involving an insurance policy taken out on a hotel. *Id*. at 261. The hotel was consumed by fire and the defendant insurance company sought to avoid payment under the policy, claiming that the policy was void because plaintiff had rented the hotel to another party and had also taken out a second insurance policy on the hotel from another insurance company. *Id*. at 261-62. Both of these acts violated the terms of the policy and both were done without the insurance company's permission. *Id*. at 262. However, after the insurance company learned of these two acts of default, and before the hotel burned down, the

insurance company made a twenty-five percent assessment on plaintiff's note.[2] *Id*. A default of the policy would result in forfeiture of the entire note to the insurance company. *Id*. at 264. However, because the insurance company issued only a twenty-five percent assessment to cover ongoing expenses, rather than collecting on the whole note, the court held that "such assessment and collection of a premium note [serves] as a waiver of an act of forfeiture which was within the knowledge of the [insurance] company." *Id*. at 264-65 (citations omitted).

Plaintiff contends that, based upon *McKenzie*, it is clear that Defendant waived Plaintiff's default under the Policy by depositing Plaintiff's untimely premium payment. However, the facts of *McKenzie* are distinguishable from the instant case. In *McKenzie*, when the insurance company made the assessment, rather than collecting the entire note that would have been due in the event of a default, it chose to collect only a twenty-five percent assessment. In addition, the notice of assessment was sent out after the insurance company discovered that the policy had been breached.

In the instant case, Defendant did not actively seek money from Plaintiff after the policy had expired, but instead notified Plaintiff that his policy was now void. Upon discovering that his policy had expired, Plaintiff mailed Defendant a check. Defendant then

---

[2]It appears that the insurance policy in *McKenzie* was similar to a mutual policy. Under a mutual insurance policy, multiple policy owners effectively form a partnership or corporation and agree to share the losses any member might sustain. Policy owners typically provide notes to the insurer, against which the insurer can assess expenses to help cover operation costs, losses, or to keep the insurer solvent. *See generally*, 1 Tenn. Juris., Insurance, § 111-16.

cashed Plaintiff's check with all of the other checks it received, posted the check to a suspense account, and then issued a refund check approximately one week after Plaintiff's late payment had been received. Had Defendant sent Plaintiff an additional bill in March 2005, and then Plaintiff submitted payment in conjunction with that bill, then *McKenzie* would be applicable, but such is not the case.

Plaintiff also cites the case of *Tennessee Farmers Ins. Co. v. Davis*, No. 02A01-9212-CV-00341, 1993 Tenn. App. LEXIS 545 (Tenn. Ct. App. August 18, 1993). In *Davis*, the Tennessee Court of Appeals addressed the issue of whether acceptance of a past-due renewal car insurance premium after the loss of the insured vehicle, and with the insurance company's knowledge of that loss, is held to waive the loss of coverage for failure to pay the premium. *Id*. at *4. In *Davis*, the plaintiff, Mr. Davis, attempted to pay his car insurance premium by check, but his check was dishonored for insufficient funds, which resulted in the expiration of his insurance policy. *Id*. at *2.

Before Mr. Davis could reinstate the policy, he was involved in an accident resulting in the total loss of the insured vehicle. *Id*. Mr. Davis notified the insurance company that his vehicle had been in an accident and the insurance company sent out a claims adjustor to inspect the vehicle. *Id*. A few days later, Mr. Davis paid his past due premium and reinstated his policy. *Id*. The insurance company did not refund the late premium payment, but instead reinstated the policy as of the date of payment and claimed that Mr. Davis was not insured at the time of the loss. *Id*. at *5. The court held that "[a]cceptance of a premium payment for property that has been totally destroyed is absolutely inconsistent with providing

coverage from and after the date of payment of the premium" and ruled that the loss of the vehicle was covered, even though the policy had not yet been reinstated as of the time of the accident. *Id*. at *9-10.

The facts of *Davis* are also distinguishable from the instant case. In *Davis*, the insurance company retained the late premium payment and effectively attempted to insure property that the insurance company knew had already been destroyed, acts which would lead a reasonable person to believe that the vehicle was covered as of the time of the accident. In the instant case, Defendant promptly refunded Plaintiff's money and in no way indicated that Plaintiff was being reinsured. The narrow ruling of *Davis* simply does not fit the facts of the instant case.

The Court is unaware of any Tennessee jurisprudence directly addressing the facts of the instant case. However, the Tennessee Supreme Court has held that

> [o]rdinarily, as stated in Cooley's Briefs on the Law of Insurance, if the contract provides that it shall be void if the premiums are not paid when due, or within a specified time thereafter, default in the payment of a premium when due will determine the insurance, without any action on the part of the insurer; and when a policy has so become void it cannot be revived without a new contract.

*Edington v. Michigan Mutual Life Ins. Co.*, 183 S.W. 728, 730-31 (Tenn. 1915) (citations omitted). The Tennessee Supreme Court has also noted that evidence of insurability and payment of premiums can be conditions precedent to reinstatement. *Barfield v. Wilson*, 669 S.W.2d 91, 94 (Tenn. 1984). In addition, the Sixth Circuit has held that the receipt **and retention** of an insurance payment in the face of a default can constitute a waiver, implying

that retention of the premium payment is a necessary precursor to waiver. *Aetna Life Ins. Co. v. Frierson*, 114 F. 56, 63 (6th Cir. 1902) (emphasis added).

And while Tennessee jurisprudence does not directly address the question at issue, numerous other courts have found that depositing a late insurance payment does not constitute a waiver of the termination of the policy when the late payment is promptly refunded. *Volis v. Puritan Life Ins. Co.*, 548 F.2d 895, 902 (10th Cir. 1977) (deposit of a late payment into a suspense account, alone, does not effect reinstatement of policy when insured was on notice of the need to submit additional evidence of insurability); *Security Life Ins. Co. v. Seeber*, 41 F.2d 600, 601 (7th Cir. 1930) (acceptance and conversion into cash of insured's late payment is conditional acceptance and does not constitute waiver); *Pajcic v. American General Life Ins. Co.*, 419 F. Supp. 2d 1380, (M.D. Fla. 2006) (insurer's deposit of funds into suspense account alone does not constitute an unconditional acceptance of the payment so as to effectuate a waiver); *Crum v. Prudential Ins. Co. of America*, 356 F. Supp. 1054, 1057 (D.C. Miss. 1973) (acceptance of insured's past-due check was clearly conditional and was not waiver); *In re Meinke, Peterson & Damer, P.C.*, 44 B.R. 105, 110 (Bankr. N.D. Tex. 1984) (conditional acceptance by placing past-due funds in suspense account does not have effect of waiving the lapse of policy); *DeTemple v. Southern Ins. Co.*, 740 P.2d 500, 503 (Ariz. Ct. App.1987) (insurer's actions in cashing a check sent following the lapse of a policy did not give rise to a finding of waiver or estoppel); *McMillon v. Old Republic Life Ins. Co.*, 342 N.E.2d 246, 249 (Ill. App. Ct. 1975) (in the absence of some retention of the payment by the insurer, or other action by it, which is inconsistent with its

claim that it did not accept the late payment, mere receipt and automatic negotiation by the insurer of a late payment does not constitute a waiver); *Troutman v. Nationwide Mut. Ins. Co.*, 400 S.W.2d 215, 216-17 (Ky. 1966) (insurer's negotiation of a check and subsequent refund of payment after policy cancellation did not estop insurer from asserting lack of coverage); *Auto Club Ins. Ass'n v. Dennie*, 470 N.W.2d 409, 411 (Mich. Ct. App. 1991) (temporary retention of premium payments, without more, is conditional and does not bind the insurer to provide coverage if there is a prompt refund of premium); *Brown v. Progressive Gulf Ins. Co.*, 761 So. 2d 134, 138 (Miss. 2000) (immediate refund of late premium payment supports a finding that initial negotiation of the check did not constitute waiver); *Hanson v. Cincinnati Life Ins. Co.*, 571 N.W.2d 363, 368 (N.D. 1997) (placement of check in suspense account pending reinstatement of the policy does not constitute waiver if acceptance is clearly conditional); *Harris v. Criterion Ins. Co.*, 281 S.E.2d 878, 882 (Va. 1981) (mere computer posting and subsequent negotiation of a money order representing the amount of a delinquent premium payment, without more, does not give rise to an estoppel when the sum is refunded within a reasonable time); *but see Mardirosian v. Lincoln Nat. Life Ins. Co.*, 739 F.2d 474, 478 (9th Cir. 1984) (deposit into suspense account instead of general depository account is of no legal significance).

In light of all of the above, the Court finds that Defendant's negotiation of Plaintiff's unsolicited late payment in the course of Defendant's normal operations did not constitute a waiver. Rather, Defendant conditionally accepted the check until it could determine the status of Plaintiff's account. Once Defendant discovered that Plaintiff's Policy had lapsed,

Defendant promptly attempted to refund Plaintiff's money. Without some attempt by Defendant to retain the funds, or some other action by Defendant consistent with an intent to reinstate the Policy, there is simply insufficient evidence to show that Defendant intended to waive the termination of the Policy. For these reasons, the Court finds that Defendant's motion for summary judgment [Doc. 14] should be granted and Plaintiff's motion for summary judgment [Doc. 11] should be denied.

## III.     Conclusion

For the reasons set forth herein, the Court finds that the Policy expired when Plaintiff failed to make timely payment of the December 2004 premium and was never successfully reinstated, nor did Defendant waive the expiration of the Policy when Defendant negotiated Plaintiff's check and subsequently attempted to refund Plaintiff's untimely payment. Accordingly, Defendant's motion for summary judgment [Doc. 14] will be granted, and Plaintiff's motion for summary judgment [Doc. 11] will be denied.

Order accordingly.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE